# UNITED STATES DISTRICT COURT
for the
Middle District of North Carolina

| | |
|---|---|
| In the Matter of the Seizure of<br>*(Briefly describe the property to be seized)*<br>Funds in the amount of $909,708.64 in a subledger at Citibank, N.A., previously held in account 6873797108 in the name of NTGH Auto Trade, INC, LLC | )<br>)<br>) Case No. 1:23MJ133-1<br>)<br>) |

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the ___Southern___ District of ___New York___ is subject to forfeiture to the United States of America under ___18___ U.S.C. § ___981 & 982___ *(describe the property)*:

Funds in the amount of $909,708.64 in a subledger at Citibank, N.A., previously held in account 6873797108 in the name of NTGH Auto Trade, INC, LLC

The application is based on these facts:
See attached Affidavit.

☑ Continued on the attached sheet.

/s/ Christopher D'Amico, Special Agent, USSS
*Applicant's signature*

Christopher D'Amico, Special Agent, USSS
*Printed name and title*

In accordance with Rule 4.1(b)(2)(A), the Applicant attested under oath to the contents of this Application, which was submitted to me by reliable electronic means, on this 16th day of March, 2023, at 1:13 p.m.

Date: 03/16/2023   1:13pm

*Judge's signature*

City and state: Durham, NC

Joe L. Webster, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEIZURE WARRANT

I, Christopher D'Amico, a Special Agent with the United States Secret Service, being first duly sworn, hereby depose and state as follows:

1. I am a Special Agent with the United States Secret Service ("USSS"). I have been employed with the USSS as a Special Agent since November 23, 2020. I completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Program, which incorporated legal, investigative, and law enforcement instruction. I completed the Special Agent Training Course at the James J. Rowley Training Center. I completed the Basic Investigations of Computer and Electronic Crimes Program. Prior to joining the USSS, I served four years as a Logistics Officer in the United States Army. I have received specialized training and experience in the investigation of financial crimes, including mail fraud, wire fraud, securities fraud, bank fraud, and money laundering, as well as other violations of federal law. I have an undergraduate degree in Criminal Justice.

2. I make this Affidavit in support of Applications for combined civil and criminal Seizure Warrants under 18 U.S.C. § 981(a)(1)(A) and (C) (civil seizure warrants) and 18 U.S.C. § 982(a) (criminal seizure warrants) for the following:

   a. Funds in the amount of $909,708.64 in a subledger at Citibank, N.A., previously held in account 6873797108 in the name of NTGH 2A Auto Trade, INC, LLC (hereinafter "TARGET ACCOUNT 1"); and

   b. Funds in the amount of $69,003.39 in a suspense account at JPMorgan Chase Bank, N.A., previously held in account

826390913 in the name of SIGLO Export Import 22 Corp (hereinafter "TARGET ACCOUNT 2").

3. Based on the investigation described in this Affidavit, there is probable cause to believe that the funds identified for seizure herein constitute or are derived from proceeds of wire fraud in violation of 18 U.S.C. § 1343 and property involved in financial and monetary transactions and money laundering conspiracy, in violation of 18 U.S.C. §§ 1956 and 1957, and are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) (civil forfeiture of property involved in money laundering); 18 U.S.C. § 981(a)(1)(C) (civil forfeiture of fraud proceeds); and 18 U.S.C. § 982(a)(1) (criminal forfeiture of property involved in violations of 18 U.S.C. §§ 1956 and 1957).

4. The facts and information contained in this Affidavit are based on my personal knowledge, as well as information obtained from witness interviews, documents, law enforcement records, and interviews and reports from other sworn law enforcement officers.

5. Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the issuance of warrants, I have not included each and every fact known to me concerning this investigation. Rather, I have set forth only the facts that I believe are necessary to establish the requisite foundation for a probable cause finding to support the issuance of the requested warrants.

**SUMMARY OF THE SCHEME**

6. In or about August and September of 2022, within the Middle District of North Carolina and elsewhere, an unidentified individual committed wire fraud and money

laundering, in violation of 18 U.S.C. §§ 1343 and 1956(h), to defraud a company (hereinafter "Victim Company") of approximately $5,142,586.93.

7. Specifically, Affiant has probable cause to believe that an employee of Victim Company, with authority to conduct financial transactions on behalf of Victim Company, fell victim to a business email compromise scheme — a scheme wherein a criminal accesses the email account of a person without authorization and then sends unauthorized email communications to another person to cause unauthorized, detrimental financial transactions.

## VICTIM COMPANY

8. Victim Company is a food distribution business located in Mount Vernon, New York. Victim Company has a bank account at HSBC Bank, and when Victim Company conducts financial transactions, Victim Company regularly transfers and receives funds via wire deposit through its account at HSBC Bank.

## THE SCHEME

9. On August 19, 2022, a representative of Victim Company received an email that appeared to be from one of Victim Company's food suppliers located outside the United States ("Supplier") updating the bank routing information for future payments to Supplier. The email directed Victim Company to wire payments to Supplier to an account at Wells Fargo bank ending in 3001 (hereinafter Wells Fargo x3001).

10. Between August 24 and September 19, 2022, Victim Company representatives made nine wire payments totaling $5,142,586.93 from Victim Company's account at HSBC Bank to Wells Fargo x3001, believing that this bank account was an account held by the Supplier.

3

11. Investigations has revealed that Wells Fargo x3001 in fact belonged to an individual, T.K., located in the Middle District of North Carolina.

12. Between approximately August 29 and September 15, 2022, T.K. conducted a series of outbound wire transfers involving the funds fraudulently obtained from Victim Company. In total, T.K. wired approximately $3,885,500.00 from Wells Fargo x3001 to several other bank accounts.

13. In September 2022, T.K., sent a series of wire transfers totaling $1,695,000.00 from Wells Fargo x3001 to TARGET ACCOUNT 1. Of the total wires sent to TARGET ACCOUNT 1, $909,708.64 was transferred to a bank subledger and remains in the custody of Citibank, and $400.00 remains in TARGET ACCOUNT 1.

14. On or about September 15, 2022, T.K. sent a wire transfer in the amount of $540,000.00 from Wells Fargo x3001 to TARGET ACCOUNT 2. Of the total amount sent to TARGET ACCOUNT 2, $69,003.39 was transferred to a suspense account and in the custody of JPMorgan Chase Bank.

15. The chart below summarizes the movement of funds from Victim Company to the TARGET ACCOUNTS:



| Citibank - NTGH 2A Auto Trade | JPMorgan Chase – SIGLO Export Import 22 Corp |
|---|---|
| 9/2 - $480,000.00 received | 9/15 - $540,000 received |
| 9/9 - $675,000.00 received | |
| 9/15 – $540,000.00 received | |
| Total – $1,695,000.00 | |

16. On or about September 19, 2022, a Victim Company representative discovered the payments made to Wells Fargo x3001 had never been received by Supplier. Victim Company representatives reviewed their email and confirmed that the sender/receiver information on the August 19 email received from their "Supplier" was fictitious.

17. On or about September 19, 2022, a Victim Company representative contacted HSBC Bank and advised the representative about the wire transfers fraudulently directed to Wells Fargo x3001.

18. On or about September 20, 2022, HSBC Bank contacted Wells Fargo Bank and provided information about the fraudulent wire transfers to Wells Fargo x3001.

19. On or about February 28, 2023, the Atlanta Field Office of the United States Secret Service contacted your Affiant regarding this scheme. The Atlanta Field Office's investigation revealed the involvement of a money mule, T.K., based in the Charlotte Field Office's district and residing in the Middle District of North Carolina.

## MONEY MULES GENERALLY

20. Based on my training and experience, I know that a "money mule" is a person whose bank account(s) acts as a conduit between a victim of a financial fraud scheme, which is generally committed via the Internet, and the criminal(s) who perpetrates the fraud scheme

and receives the funds that originated from the victim. In my experience and in discussion with other law enforcement officers who investigate fraud schemes committed via the Internet, "money mules" are often persons sixty years or older; persons who develop a romantic relationship with someone they never meet in person but consider a "boyfriend" or "girlfriend"; unemployed persons who gain "employment" by simply conducting financial transactions on behalf of a purported "employer" who recruits the money mule; and/or persons who believe or purport to believe that they are being recruited to transact money from a legitimate source, such as an inheritance or business deal. However, in actuality, fraudsters and money launderers, often located outside of the United States, use the internet to exploit human emotion and, particularly, to exploit individuals who seek out online relationships, and then use those individuals and the individuals' accounts to create the aforementioned conduits to move money obtained by fraud from the victims' accounts through the money mules and to accounts controlled by the fraudsters.

## USSS INTERVIEW OF THE MONEY MULE

21. On or about February 28, 2023, the Charlotte Field Office of the U.S. Secret Service interviewed T.K. at his residence in Concord, NC. T.K. admitted to receiving funds from Victim Company as well as transferring the funds to multiple other bank accounts to include the TARGET ACCOUNTS.

22. T.K. reported that he previously received a phone call and email from a subject who identified himself as David Lockstone. T.K. and Lockstone never met in person, and only communicated via email, text messages, and phone calls. Per the money mule, Lockstone threatened to harm his family in order to coerce him to conduct the financial transactions.

23. The money mule was instructed to use his existing Wells Fargo business account (Wells Fargo x3001), to conduct these financial transfers. Wells Fargo x3001 was established by T.K. in or about September of 2020.

24. The money mule was successful at completing multiple wire transactions, transferring funds received from the Victim Company to other bank accounts. The money mule confirmed that he sent wire transfers to the TARGET ACCOUNTS throughout September 2022. T.K. was notified by Wells Fargo Bank on 10/05/2022 that his accounts at Wells Fargo were scheduled to be closed due to fraudulent activity.

25. The money mule stated that he knew that the funds received from Victim Company, and subsequently transferred to the TARGET ACCOUNTS, were not intended for him and that the person directing the transfers was involved in something illegal.

## APPLICABLE FORFEITURE PROVISIONS

26. I understand that property subject to civil forfeiture may be seized pursuant to 18 U.S.C. § 981(b), and property subject to criminal forfeiture may be seized pursuant to 21 U.S.C. § 853(f). In cases where the Government is not certain at the time of the seizure if it will pursue civil or criminal forfeiture, courts may issue the seizure warrant under both statutes. The probable cause showing is the same for Sections 981(b) and 853(f), except that the latter also requires a showing that a restraining order "may not be sufficient to assure the availability of the property for forfeiture."

27. An order under 21 U.S.C. § 853(e) may not be sufficient to assure the availability of the property for forfeiture because there is reason to believe that the property is in the custody of the defendant, who cannot reasonably be relied on to abide by an order to

7

Case 1:23-mj-00133-JLW   Document 1   Filed 03/16/23   Page 8 of 10

maintain the property in substantially the same condition as it is at the present time in order that it will be available for forfeiture. Furthermore, based on my training and experience I know that restraining orders served on banks sometimes fail to preserve the property for forfeiture because the bank representative receiving the restraining order fails to put the necessary safeguards in place to freeze the money in time to prevent the account holder from accessing the funds electronically, or fails to notify the proper personnel as to the existence of the order, or the bank exercises its own right of setoff to satisfy an outstanding debt owed to the bank by the account holder. In contrast, where electronic funds are concerned, a seizure warrant guarantees that the funds will be in the Government's custody once the warrant is served.

28. I expect that some or all of the property subject to seizure may be found outside the Middle District of North Carolina. Section 981(b)(3) of Title 18, United States Code, explicitly provides jurisdiction for the issuance of seizure warrants for property located in other districts. This statute provides as follows:

> Notwithstanding the provisions of rule 41(a) of the Federal Rules of Criminal Procedure, a seizure warrant may be issued pursuant to this subsection by a judicial officer in any district in which a forfeiture action against the property may be filed under section 1355(b) of title 28, and may be executed in any district in which the property is found.

Issuance of the seizure warrant in this district is appropriate under the above statute, as this is the district "in which ... the acts or omissions giving rise to the forfeiture occurred," 28 U.S.C. § 1355(b)(1)(A). As provided in 18 U.S.C. § 981(b)(3), the warrant may be "executed in any district in which the property is found."

8

## CONCLUSION

29. Based on the investigation described above, there is probable cause to believe that the properties described in paragraph 2 above constitute or are derived from proceeds traceable to the commission of wire fraud, and are involved in a money laundering scheme, and are therefore subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) and (C) and 18 U.S.C. § 982(a). Therefore, I respectfully request that this Court issue Seizure Warrants for the properties described in paragraph 2 above.

CHRISTOPHER J D'AMICO
Digitally signed by CHRISTOPHER J D'AMICO
Date: 2023.03.15 14:00:06 -04'00'

Christopher J. D'Amico
Special Agent
United States Secret Service

Subscribed and sworn to before me this  16th  day of March 2023.  1:13 pm

Honorable Joe L. Webster
United States Magistrate Judge
Middle District of North Carolina